IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY W. HUNTSINGER,<br><br>          Plaintiff,<br><br>    vs.<br><br>NORTHERN INYO COUNTY LOCAL HOSPITAL DISTRICT, a public entity; HERMAN J. SPENCER, an individual; MARSHA WINSTON, an individual; and DOES 1-25, INCLUSIVE,<br><br>          Defendants. | No. CV-F-03-5070 REC DLB<br><br>ORDER DISMISSING CLAIMS ELEVEN, TWELVE, THIRTEEN & FOURTEEN AS AGAINST DEFENDANT DISTRICT.<br><br>(Doc. 83) |

On June 27, 2005, the court heard Defendants' motion for judgment on the pleadings as to certain of Plaintiff's claims. Upon due consideration of the written and oral arguments of the parties, the court rules as follows.

**I.  Factual Background**

The detailed facts of this case are set forth in the court's prior orders. See Doc. 48 ("dismissal order"). To summarize, Plaintiff Anthony Huntsinger ("Plaintiff") was an employee in the Radiology Department of the Northern Inyo Hospital ("the

1

Hospital") from approximately 1987 through December 27, 2001. The Hospital is a part of Defendant Northern Inyo County Local Hospital District ("the District"). Defendant Marsha Winston was Plaintiff's former supervisor and Defendant Herman Spencer was the former administrator of the Hospital.

Plaintiff alleges generally that Spencer and Winston retaliated against him because Plaintiff made numerous reports during his employment of shortcomings on the part of the Hospital in terms of patient care, safety, and compliance with applicable state and federal regulations. Plaintiff alleges that Winston and Doe Defendants fabricated charges surrounding Plaintiff's attendance record and that this resulted in his termination. The termination was later found to be unjustified by the District's Board. Plaintiff claims that Defendant Winston sexually harassed him and that his working conditions became so intolerable that he was constructively terminated and forced to resign. Plaintiff further alleges that when he gave written notice of his termination he requested part-time, per diem employment, and that the request was denied by Defendant Winston. Plaintiff's grievance as to this denial was subsequently denied.

**II.  Procedural History**

Plaintiff's FAC contained seventeen causes of action. Defendants filed a motion to dismiss, which was granted in part and denied in part on June 15, 2004. See Doc. 48. The claims at issue in this motion are claims eleven through fourteen. These claims are based on California's Unfair Competition Law ("UCL"),

Cal. Bus. & Prof. Code § 17200 *et seq.*.[1]  These claims were dismissed as against Defendants Winston and Spencer in the dismissal order.[2]  See Doc. 48 at 24-26.

Plaintiff alleges that the District's actions - retaliation for whistle-blowing, sexual harassment, denial of the request for per diem employment and denial of the grievance - amount to unfair (claim eleven), unlawful (claim twelve) and fraudulent (claim thirteen) business practices, all in violation of section 17200.  Plaintiff also alleges that the District made false and misleading representations to patients that the Hospital was safe and in compliance with state and federal laws in violation of section 17500 (claim fourteen).

**III.  The Current Motion**

The parties dispute the character of the current motion. The District moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The District argues that after the court ruled on the motion to dismiss, the California Court of Appeal determined that a public entity could not be liable under the UCL as a matter of law.  The District maintains that because it is a public entity, Plaintiff cannot bring an unfair competition claim against it and claims eleven through fourteen now fail.  The District also argues that the UCL claims fail because Plaintiff seeks damages in the FAC, a remedy

---

[1] All further statutory references are to the Business & Professions Code unless otherwise specified.

[2] With the exception of claim fourteen, which was against the District only.

3

1 unavailable under the UCL.

2 Plaintiff asserts that what the District filed is a motion
3 for reconsideration because it is asking the court to reconsider
4 its prior ruling based on an intervening California Court of
5 Appeal decision.  Plaintiff asserts that this is inappropriate
6 because the case is not a California Supreme Court case and
7 because the court indicated earlier that the proper vehicle for
8 determination of this issue is a motion for summary judgment.

9 Whether the motion is characterized as a motion for
10 reconsideration of the dismissal order or a motion for judgment
11 on the pleadings is immaterial.[3]  A Rule 12(c) motion is
12 essentially a Rule 12(b)(6) motion that is made after the close
13 of the pleadings.  See 2 Moore's Federal Practice § 12.38.  A
14 defense of failure to state a claim upon which relief can be
15 granted may be raised at any time, including via a Rule 12(c)
16 motion.  Fed. R. Civ. P. 12(h).  The question is, viewing the
17 allegations in the FAC as true, whether it is "beyond doubt that
18 the plaintiff can prove no set of facts in support of his claim
19 which would entitle him to relief."  Enron Oil Trading & Transp.
20 Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997)
21 (quoting B.F. Goodrich v. Betkoski, 99 F.3d 505, 529 (2d Cir.

---

23 [3] The District argued in its reply that it's motion is not
one for reconsideration because the law has changed. Defs.' Reply
24 at 3.  This is, of course, the standard for reconsideration.
See E.D. Cal. R. 78-230(k); Kona Enters. v. Estate of Bishop, 229
25 F.3d 877, 890 (9th Cir. 2000) (stating reconsideration proper if
"court is presented with newly discovered evidence, committed clear
26 error, or if there is an intervening change in controlling law").

4

1996) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957))).

Accordingly, the court will construe the District's motion as one raising the defense of failure to state a claim upon which relief can be granted pursuant to Rule 12(h), appropriately brought via a motion for judgment on the pleadings. Again, the question is whether, considering the new decision, it is beyond doubt that Plaintiff can prove no set of facts in support of his UCL claims.

**IV. Discussion**

**A. California's UCL**

Section 17206 of the UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty . . . ." Cal. Bus. & Prof. Code § 17206. Section 17201 defines "person" as "all natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Id. at 17201.

The dismissal order stated that it was inappropriate to grant dismissal at the time due to insufficient information. The court was guided by the California Supreme Court's statement in Regents of the Univ. Of California v. Superior Court, 17 Cal.3d 533, 536 (1976), that:

> in the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their

5

1        inclusion would result in an infringement upon
2        sovereign governmental powers.

3 See Doc. 48 at 24. The court stated that a summary judgment
4 motion with information regarding infringement on sovereign
5 governmental powers would be necessary.

6     The District argues that a recent Court of Appeal decision
7 clarified that public entities are not "persons" within the
8 meaning of the UCL. Plaintiff argues that under the Erie
9 doctrine the court is only bound on questions of state law by
10 decisions of the California Supreme Court and that decisions of
11 appellate courts have only persuasive value. Plaintiff's
12 contention is correct that the decisions of the Court of Appeal
13 are persuasive and not binding. See Comm'r of Internal Revenue
14 v. Estate of Bosch, 387 U.S. 456, 465, 18 L. Ed. 2d 886, 87 S.
15 Ct. 1776 (1976). It remains true that there is no California
16 Supreme Court case directly on point.

17     At the time of the dismissal order, a few appellate courts
18 had held that public entities could not be sued under the UCL.
19 See California Med. Assn. v. Regents of the Univ. of California,
20 79 Cal. App. 4th 542, 551 (2000); Janis v. California State
21 Lottery Com., 68 Cal. App. 4th 824 831 (1998); Trinkle v.
22 California State Lottery, 71 Cal. App. 4th 1198, 1202-04 (1999);
23 Community Memorial Hosp. v. County of Ventura, 50 Cal. App. 4th
24 199 (1996); Santa Monica Rent Control Bd. v. Bluvshtein, 230 Cal.
25 App. 3d 308, 318 (1991). These cases are from the second and
26 third appellate districts.

After the dismissal order was issued, the First Appellate District decided the case <u>People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Board</u>, 125 Cal. App. 4th 871 (2005) (hereinafter "<u>PETA</u>"), on which the current motion is based. In <u>PETA</u>, an animal rights group challenged an advertising campaign by the California Milk Producers Advisory Board ("CMAB"). 125 Cal. App. 4th at 874. The appellate court determined that the CMAB was a public entity operating under California's Secretary of Food and Agriculture and that public entities are not subject to liability under the UCL. <u>Id.</u> at 879.

The court in <u>PETA</u> based its decision on the plain language of the UCL, particularly as compared with language used in other statutes. 125 Cal. App. 4th at 881. The court stated:

> In all of these cases [finding UCL inapplicable], the courts noted that the definition of the term "person" in the operative statutes did not include any public entities, and concluded that the UCL did not otherwise evidence any intent to impose governmental liability. We agree. "Statutory interpretation begins with the text and will end there if a plain reading renders a plain meaning: a meaning without ambiguity, uncertainty, contradiction, or absurdity." [Citation] Section 17201 does not include any references to governmental agencies or political entities. Thus, only through an unreasonable, strained construction can CMAB, an administrative adjunct to a governmental body, be deemed encompassed by the statutory definition of "person" as included within "natural persons, corporations, firms, partnerships, joint stock companies, associations" or "other organizations of persons." (§ 17201).
>
> As respondent notes, had the Legislature wanted to include governmental entities in its definition of "person" for purposes of the UCL, it would have done so. We agree. The Unfair Practices Act (commencing

7

>     with § 17000), which was enacted in 1941, contains its
>     own definition of "person" to include "any person,
>     firm, association, organization, partnership, business
>     trust, company corporation or *municipal or other public
>     corporation*." (§ 17021, italics added.)  In contrast,
>     the UCL (commencing with § 17200), which was enacted
>     later in 1977, omitted "municipal or other public
>     corporation" from its definition of "person." (§
>     17201).  Therefore, <u>had the Legislature wished to
>     include governmental entities, such as the CMAB, in its
>     definition of "person[s]" subject to UCL liability it
>     would have done so by using language similar to that in
>     section 17021</u>.

125 Cal. App. 4th at 878-79 (italics original, underlining added, footnotes omitted).

The <u>PETA</u> court rejected the plaintiff's argument that a public entity is excluded from the statutory definition of "person" only if a civil action seeks to interfere with a "valid exercise of the state's sovereign powers." <u>Id.</u> at 879.  In so doing, the court discussed another appellate decision that had reached the same result but that had applied the interference with sovereign powers test from <u>Regents</u>, <u>supra</u>.  The <u>PETA</u> court determined that such an inquiry was unnecessary based on the plain language of the statute and it distinguished <u>Regents</u> because it did not involve the UCL.

**B.  Analysis**

    **1.  The District as a Public Entity**

The FAC alleges that the District is "a local hospital districts [sic] formed under the laws of the State of California."  FAC ¶ 4.  The District has clarified that it is a public entity formed under and subject to the regulations in the California Health and Safety Code.  Section 32121 of the Health

and Safety Code defines the powers of local health districts.  It appears without dispute that the District is a public entity.

### 2. Liability Under the UCL

As to the question of whether, as a public entity, the District cannot be liable under the UCL, the court agrees with the reasoning in the PETA case.  As PETA pointed out, the plain language of the statute, unlike other statutes that provide for public entity liability, contains no language making public entities liable under the UCL.  As the court in PETA stated, if the legislature had intended public entity liability, it knew the language to use.  Moreover, the court in PETA noted that "it is difficult to imagine a scenario whereby in one context, a governmental body could be considered a 'person' as defined by section 17201, while in another context, it is not."  125 Cal. App. 4th at 883 n.11.  Following the PETA reasoning avoids an unnecessary inquiry on summary judgment into the degree of sovereignty.

Although Plaintiff is correct that appellate authority is of only persuasive value, the fact that all of the California appellate courts to consider the issue of public entity liability under the UCL have determined, for one reason or another, that it does not exist is highly persuasive authority.  No case has been cited to the contrary.  Additionally, the general rule stated in the Regents of California case on which the dismissal order was based is, on closer inspection, a fairly specific holding.  In Regents, the California Supreme Court held that a constitutional

9

prohibition against usury applied to the University of California. The court stated the general principle quoted above, but also relied on the fact that the constitutional provision specifically exempted some entities and provided for general regulation by the legislature as follows:

> Our conclusion is supported by an examination of the constitutional provision itself. There the drafters established a generally applicable usury limit, exempting certain types of lenders, but providing for their regulation by the Legislature. (Cal. Const., art. XX, 2d § 22.) The provision for regulation of even the exempt classes indicates an intent to regulate all loans for the protection of the public. There is no indication of any intent that the University should not fall within the general class of nonexempt money lenders.

17 Cal. 3d at 537. Regents is thus distinguishable from cases decided under the UCL because it involves an area that the legislature intended to regulate in its entirety. As discussed by the court in PETA, the Legislature omitted language from the UCL that would have included public corporations such as the District. Unlike the constitutional provision, there is no indication in the UCL that the Legislature intended it to apply to public entities.

Accordingly, the District's motion to dismiss claims eleven through fourteen for failure to state a claim is GRANTED.

**3. Restitution Issue**

The damages issue argued by the District does not present an alternative basis for dismissal. The District argues that only injunctive relief and restitution are available under the UCL and Plaintiff is seeking "damages" in the FAC. The District cites

10

1  Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163,
2  173 (2000), for the proposition that damages are unavailable
3  under the UCL.  Although this point is correct, Cortez
4  specifically held that "orders for payment of wages unlawfully
5  withheld from an employee are also a restitutionary remedy
6  authorized by section 17203."  Id. at 177.  As explained in the
7  dismissal order, Plaintiff may seek restitutionary recovery from
8  his employer, the District, for back wages pursuant to Cortez.
9  The District is not entitled to dismissal on this basis.
10      **ACCORDINGLY, IT IS ORDERED** that the motion to dismiss for
11 failure to state a claim is hereby GRANTED.
12      **FURTHER ORDERED** that Plaintiff's claims eleven, twelve,
13 thirteen and fourteen as against the District are DISMISSED WITH
14 PREJUDICE.
15
16 IT IS SO ORDERED.
17 **Dated:  August 15, 2005**            **/s/ Robert E. Coyle**
   ia40ij                          UNITED STATES DISTRICT JUDGE